## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## (TAMPA DIVISION)

| | | |
|---|---|---|
| ISLAND JAY, INC, a Florida corporation,<br>3800 Tampa Road, Suite 120<br>Oldsmar, FL  34677 | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. |
| v. | ) ) | |
| AMAZON.COM, INC.,<br>440 Terry Avenue<br>North Seattle, WA 98109 USA | ) ) ) ) | JURY TRIAL DEMANDED |
| and | ) ) | |
| Amazon.com Services LLC d/b/a<br>Amazon International Sales,<br>410 Terry Ave N<br>Seattle, WA 98109-5210   USA | ) ) ) ) ) | |
| Serve:<br>Amazon.com Registered Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808 | ) ) ) ) ) | |
| Defendants.<br>_____ | ) ) | |

## COMPLAINT

COMES NOW, Plaintiff Island Jay, Inc. ("Island Jay" or "Plaintiff") filing

this action against Amazon.com, Inc. and Amazon.com Services LLC (collectively,

"Amazon") and states the following in support:

## INTRODUCTION

1.      Plaintiff has continuously been engaged in the business of selling merchandise including t-shirts, towels, hats, signs, drinkware, stickers, food, games, and beach accessories ("Merchandise") throughout the United States of America, and beyond, since 2013. Plaintiff's business includes the creation and worldwide sale of tropical themed Merchandise featuring all original trademarks, trade names, service marks, and designs with trademarked content, including: "Island Jay," "I'm The Cabana Boy," "Where Is My Cabana Boy," "Keeping My Distance," "Keeping My Distance from The Rest of The World," "My Birthstone Is A Seashell," "I'm Not Waiting Til 5," "Work Sucks Lets Find a Tiki Bar," "Work Sucks Lets Find a Beach Bar," "Sell Your Stuff Find A Beach," "Sell Your Stuff," "Do You Hear The Ocean Calling," "The Beach is My Happy Place," and "Stay 6 feet Away," (collectively, the "Marks"). As a result of these activities, Plaintiff has acquired exclusive rights in the Marks.

2.      Since 2013, Plaintiff has invested a considerable amount of time, energy, and capital building the success of the Marks.

3.      Amazon conducts business in Tampa, Florida and across the United States by offering and advertising merchandise for sale that infringes on the registered trademarks of Plaintiff and copyright images owned by Plaintiff.

4.      Plaintiff has formally submitted their trademarks to Amazon's

trademark registry to prevent exactly what is alleged in this Complaint. Regardless of Plaintiff's filed trademarks and of Plaintiff submitting Amazon's own infringement reporting form, counterfeit and infringing merchandise bearing Plaintiff's Marks are listed again and again, causing considerable damage to Plaintiff's brand and causing a substantial loss in sales.

5.      Plaintiff has sent over one hundred and seventy (270) takedown notices to Amazon. Nevertheless, Plaintiff has only been successful in getting a few infringing listings of items taken down from the Amazon website.

6.      Amazon produces some of the counterfeit and infringing items through their own production companies, and Amazon directly ships counterfeit and infringing products to customers, even after the takedown notices have been received.

7.      Amazon also fails to take down listings of third-party sellers, even after being notified specifically that a listing infringes on Plaintiff's trademarks.

8.      Amazon fails to notify either Plaintiff or customers that a counterfeit and infringing item has been sent to about the counterfeit transaction.

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff is a Florida corporation, with its principal place of business located in Oldsmar, Florida. Plaintiff is the successor of Jason Guarino and Alistair Mitchell, the principals of Island Jay, Inc., and Mango Gear, Inc. (a former Florida

corporation) all of whom assigned or granted Plaintiff an exclusive license to utilize the Marks. The terms "Plaintiff" and "Island Jay" refer to the present Plaintiff, as well as its predecessors, depending on the place and time of the particular allegations stated herein.

10.    Amazon hosts a website that lists and sells products uploaded from third parties. Some of these products are printed, packed, and shipped by those third parties while others are printed, packed, and shipped by Defendants themselves.

11.    Upon information and belief, Defendant Amazon.com, Inc. is a Delaware corporation, with its principal place of business located at 440 Terry Avenue North Seattle, WA 98109 USA.

12.    Upon information and belief, the Amazon Merch Program allows third party sellers to upload designs and graphics to generate products to sell on the Amazon website in addition to allowing third-party sellers to maintain their own inventory of counterfeit and infringing products and sell them on the Amazon website.

13.     Once a product is sold using the Amazon Merch Program, Amazon completes the orders by printing, packing, and shipping the orders to customers. Amazon maintains stock of materials necessary to complete these orders, so the third-party seller has no inventory of their own.

14.     Through the Amazon Merch program, Amazon lists the products for sale on their website as "Prime" products, increasing incentives to purchase those products, which includes free two-day shipping. This allows Amazon to have an unfair competitive advantage due to Amazon's global reach to advertise, sell, ship, and distribute counterfeit and infringing Island Jay Merchandise.

15.     Plaintiff's claims are brought for false designation of origin and false descriptions in violation of § 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a); federal trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1); for violation of the Florida Registration and Protection of Trademarks Act, F.S.A. § 495.131; for common law trademark and trade name infringement; for common law unfair competition and dilution; and for common law unjust enrichment.

16.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to § 39 of the Lanham Act, 15 U.S.C. § 1121(a); 28 U.S.C. § 1331, because Plaintiff's claims involve a federal question; 28 U.S.C. § 1338(a), because Plaintiff's claims involve trademark infringement; and 28 U.S.C. § 1367(a), and because Plaintiff's state law claims are related to its trademark claims against Defendants and arise out of the same case and controversy.

17.     This Court has jurisdiction over Defendants by virtue of Florida's long-arm statute Fla. Stat. Ann. § 48.193(1).

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

## BACKGROUND

### Plaintiff's Use and Adoption of the Marks

19.     Plaintiff is a successful online business that manufactures and sells high quality tropical themed Merchandise worldwide.

20.     Plaintiff and its predecessors have engaged in the business of selling tropical themed merchandise since 2013.

21.     Since 2013, and continuing uninterrupted through the present day, Plaintiff has used the "Island Jay" Mark and name to identify the source of its original merchandise to distinguish it from the products of others.

22.     Plaintiff sells Merchandise featuring the Marks on its website at www.islandjay.com. Plaintiff also advertises Island Jay Merchandise with Google, Instagram, and Facebook. Additionally, Plaintiff has created a social media following where many of their products and trademarks are presented and linked to islandjay.com. Plaintiff was previously offering Island Jay products through Amazon.com. Plaintiff was forced to stop selling on Amazon's website so Plaintiff could control the sales channel and merchandise.

23.     The Merchandise featuring the Marks is popular and in high demand.

24.     Plaintiff has invested substantial effort, time, and money in the Marks and has otherwise made a significant investment in its Marks.

25.     Plaintiff has spent over $2.05 million for the Island Jay brand and trademarks since 2013 in advertising, sponsorships, and brand promotions alone.

26.      In 2020, Plaintiff placed 70.2 million online ads within the United States at a cost of $605,000.

27.     Plaintiff has 140,000 unique customers, and Plaintiff maintains an e-mail list of 190,000 entries.

28.     Plaintiff maintains a social media presence with over 132,000 followers on Facebook & Instagram.

29.     Plaintiff maintains on IslandJay.com over 20,800 unique product reviews with an average satisfaction rating of 97 percent.

30.     However, when a consumer purchases a counterfeit and infringing product from the Amazon Merch program or another third-party seller, the satisfaction rating decreases, and the quality of the goods is diminished.

31.     Long before the acts of Amazon described in this Complaint, Plaintiff has continuously used the Marks in commerce in the United States in and in connection with its Merchandise business.

32.     As a result of this usage, Plaintiff has nationwide common law rights to its Marks that predate Amazon's usage as described herein.

33.     To create and maintain goodwill among its customers, Plaintiff has taken substantial steps to ensure that the products containing the Marks are of

the highest quality. Plaintiff only produces products that will maintain a lifespan that exceeds traditional expectations. Additionally, Plaintiff sources raw materials from the United States where possible.

34.     Amazon, on the other hand, undercuts Island Jay's price by at least 20 percent and expedites the counterfeit and infringing production process as well as the shipping process.

## Plaintiff's Registered Trademarks

35.     On May 2, 2013, Mr. Guarino filed a trademark application for the "Island Jay" mark with the USPTO. On December 17, 2013, the "Island Jay" mark became a federally registered trademark (serial number 85921448).

36.     On August 27, 2018, Messrs. Guarino and Mitchell filed a trademark application for the "I'm the Cabana Boy" mark with the USPTO. On July 30, 2019, the "I'm the Cabana Boy" mark became a federally registered trademark (serial number 88094322).

37.     On August 27, 2018, Messrs. Guarino and Mitchell filed a trademark application for the "Where is my Cabana Boy" mark with the USPTO. On July 30, 2019, the "Where is my Cabana Boy" mark became a federally registered trademark (serial number 88094322).

38.     On October 19, 2018, Plaintiff filed a trademark application for the "I'm Not Waiting Til 5!" mark with the USPTO. On June 4, 2019, the "I'm Not

Waiting Til 5!" mark became a federally registered trademark (serial number 88161902).

39.     The "Keeping My Distance" design includes the "Island Jay" mark which has been a federally registered trademark since December 17, 2013 (serial number 85921448).

40.     The "Keeping My Distance From The Rest Of The World" design includes the "Island Jay" mark which has been a federally registered trademark since December 17, 2013 (serial number 85921448).

41.     On May 2, 2013, Mr. Guarino filed a trademark application for the "My Birthstone Is A Seashell" mark with the USPTO. On December 17, 2013, the "My Birthstone Is A Seashell" mark became a federally registered trademark (serial number 85921448).

42.     On May 2, 2013, Mr. Guarino filed a trademark application for the "Work Sucks Lets Find a Tiki Bar" mark with the USPTO. On December 17, 2013, the "Work Sucks Lets Find a Tiki Bar" mark became a federally registered trademark (serial number 85921448).

43.     On May 2, 2013, Mr. Guarino filed a trademark application for the "Work Sucks Lets Find a Beach Bar" mark with the USPTO. On December 17, 2013, the "Work Sucks Lets Find a Beach Bar" mark became a federally registered

trademark (serial number 85921448).

44.   On May 2, 2013, Mr. Guarino filed a trademark application for the "Sell Your Stuff  Find A Beach" mark with the USPTO. On December 17, 2013, the "Sell Your Stuff  Find A Beach" mark became a federally registered trademark (serial number 85921448).

45.   On May 2, 2013, Mr. Guarino filed a trademark application for the "Sell Your Stuff" mark with the USPTO. On December 17, 2013, the "Sell Your Stuff" mark became a federally registered trademark (serial number 85921448).

46.   On May 2, 2013, Mr. Guarino filed a trademark application for the "Do You Hear The Ocean Calling" mark with the USPTO. On December 17, 2013, the "Do You Hear The Ocean Calling" mark became a federally registered trademark (serial number 85921448).

47.   On May 2, 2013, Mr. Guarino filed a trademark application for the "The Beach is My Happy Place" mark with the USPTO. On December 17, 2013, the "The Beach is My Happy Place" mark became a federally registered trademark (serial number 85921448).

48.   The "Stay 6 Feet Away" design includes the "Island Jay" mark which has been a federally registered trademark since December 17, 2013 (serial number 85921448).

**Defendants' Infringement of the Marks**

49.     Plaintiff has sent over 270 takedown notices from the end of 2019 through present through either Amazon's Infringement Reporting Form at https://www.amazon.com/report/infringement or through Amazon's Brand Registry (ABR) at https://brandregistry.amazon.com/.

50.     Of those, 84 of them were rejected and remained on sale on Amazon.com, requiring multiple reports to get them taken down. ultimately requiring 405 takedowns for 270 unique counterfeits.

51.     To complete the Infringement Reporting Form, parties submit all the information about their trademark to Amazon in order to file a takedown notice. All of the trademark details must be filled out in full each time a party wishes to submit the form.

52.     Amazon is now requiring Plaintiff to place an order for counterfeit products to submit a report of a counterfeit, thus requiring Amazon to be paid for a counterfeit product prior to accepting a notification.

53.     The ABR allows sellers to submit trademark information through an online portal, so Amazon can recognize and store trademarks that have been registered. Because Amazon already has the trademark details, the takedown process is usually faster than submitting an Infringement Reporting Form. Plaintiff has filed the Marks through the ABR portal, yet Amazon continues to

infringe on the Marks.

54.     Although Amazon has generally taken down violating listings from their website in response to Plaintiff's notices, Defendants continue to ship the counterfeit and infringing merchandise to the customer and does nothing to alert customers that they have purchased a counterfeit and infringing item. In many cases Amazon has several days to act after receiving notice of an infringement on their site and still fails to inform the customer both before or after it ships. Additionally, Amazon has never notified the Plaintiff if they have sold a counterfeit and infringing product.

55.     Despite being alerted to the improper use of the "Island Jay" brand, Amazon still has multiple products being sold on their website that infringe on Plaintiff's trademarks. For example, as of January 26, 2021, Amazon's website lists a shirt with the logo "Keeping My Distance from The Rest of The World" which uses an Island Jay image and includes "Island Jay" in the design just as it appears in Plaintiff's original product. This product, sold through the Amazon Merch program, is listed as a Prime product that is both sold and shipped by Defendants.

56.     Amazon is not taking basic measures to ensure trademarks are not violated as Amazon lists, sells, and ships products with the designs that include Plaintiff's Marks, although they have been repeatedly reported as trademark infringement by Plaintiff, and Plaintiff has even registered the Marks with

Amazon directly. Defendants have the resources and technology to prevent counterfeit goods from being repeatedly sold on their website.

## COUNT I

### False Designations of Origin and False Descriptions
### in Violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

57.     Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

58.     Defendants' conduct constitutes the unauthorized use in commerce of the Marks, and a false designation of origin. Defendants have created a substantial likelihood that the public will be confused, mistaken, or deceived as to the origin, sponsorship, and approval of Defendants' goods and services, and will believe that Defendants' goods and services originate from, or are approved, supported, and endorsed by Plaintiff.

59.     Defendants' conduct has created a substantial likelihood that the public will be confused, mistaken, or deceived as to the origin, sponsorship, and approval of Plaintiff's goods, and will believe that Plaintiff's goods originate from, or are approved, supported, and endorsed by Defendants – also known as "reverse confusion" – thereby irreparably depriving Plaintiff of the benefit of its many years of effort to establish the Marks and name in the Merchandise business.

60.     Defendants copied the Marks with full knowledge of Plaintiff's prior use of the Marks and has acted, and is continuing to act, willfully.

61.     Defendants' actions violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Unless enjoined, Defendants' actions will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law.

## COUNT II

### Federal Trademark Infringement
### in Violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1)

63.     Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

64.     The acts of Defendants constitute use in commerce of reproductions, copies, or colorable imitations of Plaintiff's federally registered marks in connection with the reproduction, distribution, and sale of goods in violation of 15 U.S.C. § 1114(1).

65.     Defendants' use of the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

66.     Defendants' use of the "I'm The Cabana Boy" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

67.     Defendants' use of the "Where Is My Cabana Boy" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

68.     Defendants' use of the "I'm Not Waiting Til 5" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

69.    Defendants' use of the "Keeping My Distance from The Rest of The World" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

70.    Defendants' use of the "My Birthstone Is A Seashell" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

71.    Defendants' use of the "Work Sucks Lets Find a Tiki Bar" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

72.    Defendants' use of the "Work Sucks Lets Find a Beach Bar" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

73.    Defendants' use of the "Sell Your Stuff Find A Beach" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

74.    Defendants' use of the "Sell Your Stuff" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

75.    Defendants' use of the "Do You Hear The Ocean Calling" design containing the "Island Jay" mark on or in connection with such goods is likely to

cause confusion, cause mistake, or deceive.

76. Defendants' use of the "The Beach is My Happy Place" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

77. Defendants' use of the "Stay 6 feet Away" design containing the "Island Jay" mark on or in connection with such goods is likely to cause confusion, cause mistake, or deceive.

78. Defendants' infringement is willful, with full knowledge, and in conscious disregard of Plaintiff's rights and with intent to trade off of Plaintiff's goodwill in its registered marks.

79. Unless the actions of Defendants described herein are enjoined, Plaintiff will suffer injury and damage.

## COUNT III

### Trademark Infringement in Violation of FSA § 495.131

80. Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

81. Use of the Marks by Amazon was done without the consent of the registrant of the Marks, Island Jay.

82. Defendants' reproduction, counterfeit, copy, or colorable imitation of the Marks in connection with the sale, offer for sale, distribution, or advertising of any goods or services constitutes trademark infringement and is likely to cause

confusion, to cause mistake, or to deceive consumers as to the source or origin of Plaintiff's product.

83.    Defendants knew their use of the Marks were likely to cause confusion, to cause mistake, or to deceive consumers as to the source or origin of Plaintiff's product.

84.    Defendants' reproduction, counterfeit, copy, or colorable imitation of Plaintiff's trademark is and was calculated to deceive the purchasers and consumers of Plaintiff's product and has misled many of them to buy the product sold by Defendants in the belief that it is manufactured by Plaintiff, to the diminution of the business and profits of Plaintiff.

85.    Defendants have reproduced, counterfeited, copied or colorably imitated Plaintiff's Marks, and has applied it to reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon and in conjunction with the sale, offering for sale, distribution or advertising in and of goods or services.

86.    There exists the likelihood of injury to Plaintiff's business reputation, or of the dilution of the distinctive quality of Plaintiff's Marks, trade name, label, or its form of advertisement.

87.    Defendants' unlawful actions have caused, and will continue to cause, irreparable injury to Plaintiff unless enjoined.

## COUNT IV

### Common Law Trademark and Trade Name Infringement

88.    Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

89.    Defendants' unauthorized use of the Marks in interstate commerce and in the State of Florida in connection with the promotion and offering of Defendants' goods constitutes a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact, which constitutes an infringement of Plaintiff's common law trademark and trade name rights in the Marks.

90.    The words and/or designs used by Defendants are identical to Plaintiff's and they are likely to cause confusion, deceive, and mislead others. Defendants' use of the Marks is likely to create the false impression of the origin, sponsorship, and approval of Defendants' goods and services by Plaintiff, and the origin, sponsorship, and approval of Plaintiff's goods and services by Defendants.

91.    Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiff unless enjoined.

## COUNT V

### Common Law Unfair Competition and Dilution

92.    Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

93.     Through their activities in adopting, distributing, and selling goods under trademarks and trade names that are identical to Plaintiff's Marks, Defendants have unlawfully used Plaintiff's Marks, names, and goodwill for its own benefit. These activities constitute common law unfair competition and dilution and have caused damage to Plaintiff.

94.     Defendants' activities allow Defendants to use and benefit from the goodwill and reputation earned by Plaintiff to obtain a ready customer acceptance of Defendants' goods and constitute unfair competition, palming off, and misappropriation for which Plaintiff is entitled to recover all remedies provided by common law.

## COUNT VI

### Common Law Unjust Enrichment

95.     Plaintiff incorporates by reference paragraphs 1 through 56, and any other paragraph the Court deems appropriate, as if fully set forth herein.

96.     Through Defendants' unlawful infringing use of the Marks, Defendants have unjustly enriched themselves, and (upon information and belief) continue so doing, in an amount unknown to Plaintiff.

97.     Plaintiff is entitled to just compensation for Defendants' unjust enrichment, which was obtained through Defendants' unlawful and infringing use of the Marks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment:

1.      That Defendants have made false designations of origin and false representations in commerce in violation of 15 U.S.C. § 1125(a);

2.      That Defendants' use of the federally registered Marks constitutes willful Federal Trademark Infringement in Violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1);

3.      That Defendants' use of the Marks constitutes trademark infringement, in violation of FSA § 495.131;

4.      That Defendants have infringed Plaintiff's Marks in violation of common law;

5.      That Defendants have unfairly competed with Plaintiff, in violation of common law;

6.      That Defendants have been unjustly enriched by their actions;

7.      Preliminarily and permanently enjoining and restraining Defendants, their agents, officers, employees, attorneys, and all persons in active concert or participation with Defendants from:

a.      Using, possessing, receiving, manufacturing, distributing, promoting, displaying, licensing, advertising, offering for sale, selling, transferring, registering, assigning, or otherwise employing or exploiting Plaintiff's Marks or

any colorable imitation thereof;

b.      Committing any other acts calculated or having the tendency to cause confusion, mistake, or deception between Plaintiff and its goods on the one hand, and Defendants' or any other party's goods on the other;

c.      Committing any other acts calculated or having the tendency to create the mistaken impression that there is some association, connection, or affiliation with and/or sponsorship or approval of Defendants' goods by Plaintiff, and/or Plaintiff's goods by Defendants;

d.      Authorizing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to paragraphs (a) through (c), above;

e.      Committing trademark and trade name infringement, unfair, unconscionable, and deceptive methods, acts, and practices, unfairly competing with Plaintiff, and/or committing any other act or making any other statement that infringes Plaintiff's Marks, constitutes unfair, unconscionable, and deceptive methods, acts, and practices, infringes on Plaintiff's federally registered Marks, subjects Plaintiff to unfair competition, or unjustly enriches Defendants at Plaintiff's expense under federal law, common law, or the laws of the State of Florida.

8.      Requiring Defendants to deliver up for destruction all infringing and

diluting materials and objects, including labels, signs, prints, packages, wrappers, containers, advertisements, electronic media, and other materials bearing any of the Marks or any colorable imitation, or other counterfeit, copy, infringing, or substantially indistinguishable designation of any of Plaintiff's Marks;

9.     Requiring Defendants to publish clarifying statements that Defendants are not associated with Plaintiff;

10.     Requiring Defendants to account for and to pay over to Plaintiff all of Defendants' profits and all damages sustained by Plaintiff due to Defendants' misuse of Plaintiff's Marks;

11.     Awarding Plaintiff its actual damages and Defendants' profits together with treble damages pursuant to 15 U.S.C. § 1117;

12.     Awarding Plaintiff applicable statutory damages for Defendants' violations of FSA § 495.131 pursuant to FSA § 495.141;

13.     Awarding Plaintiff its attorney fees, costs, and expenses pursuant to 15 U.S.C. § 1117;

14.     Awarding Plaintiff punitive damages in an amount sufficient to deter and punish Defendants for their willful infringement;

15.     In the alternative, at Plaintiff's election at any time before final judgment is entered, awarding Plaintiff its statutory damages, pursuant to 15 U.S.C. § 1117.

16.     Awarding Plaintiff the costs of suit; and,

17.     Awarding Plaintiff any and all such other relief as the Court deems proper and just under the circumstances.

## JURY DEMAND

A trial by jury of all issues so triable is demanded.

Respectfully submitted on this 30th day of January 2022,

/s/ Dallas S. LePierre
Dallas S. LePierre
FL. Bar No. 101126

**HDR, LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0444
dlepierre@hdrattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of the foregoing

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to all counsel of record.

Respectfully submitted this 30th day of January 2022,

<u>/s/ Dallas S. LePierre</u>
Dallas S. LePierre
FL. Bar No. 101126

**HDR, LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0444
dlepierre@hdrattorneys.com